CHARLES J. SCHUCK, Judge.
On the 6th day of April 1940, one Lloyd Adkins, Jr., then sixteen years of age, was adjudged a delinquent within the meaning of the laws of the state of West Virginia, by the Ka-nawha county juvenile court, and as his parents were unable to properly care for, protect, and discipline him, he was ordered to be committed to the West Virginia industrial school at Pruntytown; the superintendent of the said school was designated as the guardian for the said Lloyd Adkins and was directed to receive him into his custody as such superintendent, to hold, care for, train, and educate him until such time as he should attain the age of twenty-one years. Before his commitment to the said reform school it was found and known by the Kanawha eounty juvenile authorities that Adkins was afflicted with syphilis, and information to that effect was some time later conveyed to the board of control of the state of West Virginia and to the authorities at said industrial school as well. Thereupon the state director of the department of pub- *98 lie assistance was advised by the státe board of control that the said Adkins would be accepted at the industrial school only on certain conditions, which included a statement from the county health officer or some medical officer to the effect that the said Adkins had reached a noninfectious state, and detailing the treatment that he had already received, as' well as recommending the treatment which he should receive after being admitted to the said industrial school. A further condition before his admission, was the requirement that the West Virginia industrial school for boys should have an examination made of the said Adkins by Dr. C. M. Ramage, superintendent of the Fairmont emergency hospital, a state institution, to ascertain whether his disease was noninfectious; and for the purpose of conducting the said examination and continuing any necessary treatment, the said Adkins was taken to the said hospital at Fairmont, where he was admitted on February 11, 1941, and where an examination disclosed that he was suffering from the disease in question, although no lesions were present to indicate that the disease was infectious to others.
Under Dr. Ramage, the superintendent of the said hospital, the treatment was continued for several weeks and had reached the point where, from the evidence, Adkins was still confined to his room and bed, yet, nevertheless, by reason of his improved condition, was in the beginning of March, 1941, allowed bathroom privileges. On March 3, 1941, having in some manner secured clothing, he was discovered by the head nurse to be dressed in the said clothing, and was immediately ordered to his room to undress and go to bed. He entered the room and closed the door, seemingly obeying the order of the-head nurse, and shortly thereafter leaped through a window and escaped. On the same day of the escape, and shortly thereafter, the said Adkins stole a DeSoto automobile belonging to the claimant, Ruth Miller, and at or near Shinnston, West Virginia, wrecked and damaged the said automobile to the amount set forth in the petition filed herein for an award. The said Adkins was subsequently tried in the criminal court of Marion county for stealing the said automobile, and upon *99 a plea of guilty, was sentenced to the state penitentiary. Upon this statement of facts, this court is asked to make an award for the damages suffered by the claimant in the loss and injury to the said automobile, occasioned by the said Adkins, as herein shown and set forth.
At the very outset of the consideration of the claim, a number of questions present themselves in the determination of how far, if at all, the state or its agency, the board of control, would be liable for acts of negligence, if any, or nonfeasance on the part of the hospital authorities or those who had Adkins in custody at the time of his treatment at the Fairmont hospital. A careful search of the authorities and decisions failed to reveal any adjudicated cases which would fit the facts presented in the instant case, although a number can be found in which states, counties and municipalities are held not liable for the acts of agents or officials, assuming that such acts were negligent in their character.
The act creating the court of claims, in our opinion, contemplates a broad, wide and liberal construction, and places a moral liability on the state, so far as an award may be concerned, when heretofore, as herein indicated, states and their governmental agencies were in no sense liable for the acts of negligence or nonfeasance of agents or officers. However, assuming for the purpose of our decision that the interpretation that we place on the act creating the court is correct, are we not still bound to find further that the acts of those in charge of the hospital at Fairmont were of such a negligent character and nature, as under ordinary conditions would make the said officials and agents personally guilty of negligence and answerable in damages for the injury to claimant’s automobile?
It is true that the Adkins boy, as shown by the evidence, had been guilty of a number of automobile thefts, that he had made several escapes from custody, that for one of his age he had already shown criminal tendencies to a marked degree, and that he was likewise suffering from the disease in ques *100 tion as heretofore noted. He had been confined to his bed in the said hospital for about three weeks, when, by reason of the progress that’ he had made toward recovery, so far as the communication of his disease to others was concerned, he was allowed what are commonly termed bathroom privileges.
In the very beginning, we must recognize that the institution involved, and where Adkins was held in custody, is a hospital and not a prison or reformatory; that those in charge were physicians and nurses, not law enforcement officers. That the board of control as a state agency, so far as the evidence reveals, had not yet accepted Adkins as a ward of the state and could not, therefore, be charged with the full responsibility, so far as his custody was concerned, until all the conditions and requirements for his acceptance had been fully met and satisfied. He was still, in our opinion, in the care and custody of the juvenile court of Kanawha county, and not in the absolute custody of the state board of control.
However, putting all these matters aside, has negligence on the part of the attendants at the Fairmont hospital been shown? —a factor which is necessary before the state or its agency, the board of control, could be held liable for an award by this court. We do not think so.
At the beginning of March of the year of his confinement at the hospital, to be exact, on the 3rd day of March, he was found to be clothed, having obtained the clothing in some manner not known to the authorities in charge of the hospital. He was immediately ordered to undress and return to his room and bed, and seemingly entered his room for that purpose, and after having closed the door, he made his escape.
The hospital authorities were obliged to exercise ordinary care in controlling the custody of the said Adkins, and it being an emergency hospital under the control of the state, and having, no doubt, many cases for treatment and observation, it could not be expected that the hospital would be put on the same basis as a penal institution or obliged to exercise the same *101 vigilance as is exercised in the ordinary penal or reform institution in controlling the custody of prisoners confined therein; nor did it have the means at its command, so far as the evidence reveals, to prevent such escape.
The nurse in question had the right to assume that, under all circumstances, Adkins was about to obey her command. And while it may have been a mistake to allow him to enter the room without an attendant, yet this act of itself could not be construed as negligence since, under all the circumstances, reasonable minds could well differ as to what should have been done in the exercise of ordinary care; and considering further the season of the year, can we say that the nurse did not act properly and discreetly, , and that she was not exercising ordinary care under all the attendant circumstances?
With these facts in mind, we fail to find that there was such negligence as would make the attendants or those in charge of the hospital guilty of such negligent acts or such nonfeasance as would make the board of control liable. We repeat that, while the act creating this court is broad and wide in its scope, and while we conclude that a liberal interpretation and construction must be placed on its various provisions, yet the state cannot be held liable merely because someone theretofore not fully in its custody had committed a tort, by reason of which a citizen suffered damage. There still must be negligence, as herein indicated, on the part of the state agency, department or employees to justify the finding of an award.